J-S44033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.C., a Minor | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Y.C., Mother | : | No. 654 EDA 2017 |

Appeal from the Decree entered January 18, 2017
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): CP-51-AP-0001308-2016;
CP-51-DP-0000932-2016

BEFORE: BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                     **FILED JULY 31, 2017**

Y.C. ("Mother") appeals from the Decree granting the Petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate her parental rights to her minor son, J.C. ("Child"), born in 2016, pursuant to section 2511 of the Adoption Act, **see** 23 Pa.C.S.A. § 2511, and to change his permanency placement goal to adoption. We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal. **See** Trial Court Opinion, 3/21/17, at 1-10.

On appeal, Mother raises the following issues for our review:

1. Did the trial court erred [*sic*] when it found that [DHS,] by clear and convincing evidence[,] had met its burden to terminate [Mother's] parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1)[,] (2), [](5) [and] (8)?

2. Did the trial court erred [*sic*] when it found that the termination of Mother's parental rights was in [] Child's best

interests[,] and that [DHS] had met its burden pursuant to 23 Pa.C.S.A. § 2511(b)?

3. Did the trial court erred [*sic*] in changing the permanen[cy] placement goal from reunification to adoption?

Brief for Mother at 3.[1]

In her first issue, Mother contends that the evidence did not establish, by clear and convincing evidence, sufficient grounds to involuntarily terminate her parental rights. *Id*. at 9. Mother asserts that, "from the beginning of the case[, she] began to work on her case objectives for visitation, housing, mental health and drug treatment before she was incarcerated for the probation violation." *Id*. at 10. Mother also asserts that, prior to her incarceration, she "had housing with her brother and then was able to get her own apartment." *Id*. Mother claims that, after she "was released from incarceration, she continued to work on her case objectives, had negative drug screens[,] and was then able to visit with [Child] in September 2016." *Id*. Mother argues that the trial court "completely discounted [her] actual work on her case objectives." *Id*.

---

[1] Mother failed to address her third issue in the argument section of her brief. Therefore, it is waived. *See* Pa.R.A.P. 2119(a) (providing that the argument section of an appellant's brief is to be "divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Even if Mother had properly presented this issue, we would have determined that it lacks merit based on our disposition of Mother's first two issues.

In its Opinion, the trial court addressed Mother's first issue, set forth the relevant law, and determined that DHS had established, by clear and convincing evidence, grounds for termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (5).[2]  **See** Trial Court Opinion, 3/24/17, at 10-13, 15.  We agree with the reasoning of the trial court, and affirm on this basis as to Mother's first issue.  **See id**.

In her second issue, Mother contends that the evidence did not establish, by clear and convincing evidence, sufficient grounds to determine whether involuntarily terminating her parental rights was in Child's best interest.  Brief for Mother at 12.  Mother asserts that the caseworker had insufficient time to observe Mother's interactions with Child, so as "to truly develop a comprehensive analysis of the nature of the bond between [them.]"  **Id**.  Mother also claims that "[t]he [trial c]ourt's visitation restrictions on [her,] and the time that she has been incarcerated have made it difficult for Mother to work on establishing a bond with [Child]."  **Id**.

---

[2] Although the trial court indicated, in its Decree, that Mother's parental rights had been involuntarily terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8), the trial court did not address subsection 2511(a)(8) in its Pa.R.A.P. 1925(a) Opinion.  Moreover, termination under subsection 2511(a)(8) would not have been appropriate, as 12 months had not elapsed between the date when Child was removed from Mother's care, and the date of the termination Order.  Nevertheless, satisfaction of any one subsection of section 2511(a), along with consideration of subsection 2511(b), is sufficient for the involuntary termination of parental rights.  **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).  Thus, because the trial court properly determined that involuntary termination of Mother's parental rights was appropriate under subsections 2511(a)(1), (2), (5) and (b), its Order warrants affirmation.

Mother argues that, with additional time and contact with Child, she will be able to continue to develop a significant parent-child bond with him. *Id*.

In its Opinion, the trial court addressed Mother's second issue, set forth the relevant law, and determined that the issue lacks merit. *See* Trial Court Opinion, 3/24/17, at 14-15. We agree with the reasoning of the trial court, and affirm on this basis as to Mother's second issue. *See id*.

Decree affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2017

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
IN THE COURT OF COMMON PLEAS


IN THE INTEREST OF:        : FAMILY COURT DIVISION
                                     : JUVENILE BRANCH
                                     :

J. C., a Minor                   : CP-51-AP-0001308-2016/CP-51-DP-0000932-2016
d/o/b: ████/2016          :
                                     :
Appeal of:                  : Superior Court No: 654 EDA 2017
Y. I. C., Mother            :


# OPINION


## INTRODUCTION

Y.I.C. ("Mother"), Appeals from the Decree and Order entered by this Court on January 18, 2017, granting the Petition to Involuntarily Terminate Mother's Parental Rights, and changing the Permanency Goal from reunification to Adoption, of her minor son, J.C., ("Child"), (d/o/b: ████/2016). The Petition was filed by the Department of Human Services ("DHS") on December 30, 2016, and served on Mother.

This Court held a Goal Change/Termination of Parental Rights Hearing on January 18, 2017. After a full Hearing on the merits, this Court found that clear and

convincing evidence was presented to terminate the parental rights of Mother, and the rights of unknown putative Father and change the permanency goal to Adoption. [1]

In response to the Decree and Order of January 18, 2017, counsel for Mother filed a Notice of Appeal with Statement of Matters Complained of on Appeal on February 16, 2017.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In her Statement of Matters Complained of on Appeal, Mother raises the following issues:

1. The trial court erred when it found that the Department of Human Services by clear and convincing evidence had met its burden to terminate Appellant's parental rights pursuant to 23 Pa.C.S.A. §2511 (a)(1), (a)(2), (a)(5), and (a)(8).

2. The trial court erred when it found that the termination of Mother's parental rights was in the Child's best interest and that the Department of Human Services had met its burden pursuant to §2511(b).

3. The trial court erred in changing the permanent placement goal from reunification to adoption.

---

[1] Mother's parental rights were also involuntarily terminated on November 30, 2015 as to her two children: O.O., d/o/b:▆▆▆09- CP-51-DP-0045276-2009; and R.G., d/o/b:▆▆▆/02-CP-51-DP-0012074-2010. (Appeals were not filed).

2

# PROCEDURAL HISTORY

Mother has a history of severe drug use; lack of mental health treatment and parental neglect of her children. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "a").

On April 15, 2016, the Department of Human Services (DHS) received a General Protective Services (GPS) Report alleging that Mother and Child had tested positive for phencyclidine (PCP) at the time of the Child's birth on April 14, 2016. Mother stated that she voluntarily left Interim House, where she had been receiving substance abuse treatment, because the program was not helping her. The Report alleged that Mother left Interim House on April 5, 2016 and that Mother's two older Children were in the process of being adopted. The Child, J.C., was expected to be discharged from the hospital on April 16, 2016. He weighed six pounds and 12 ounces at the time of birth. Mother had five prenatal visits between the months of October 2015 and April 2016 at Women's Care Center. Mother has a history of anxiety, depression, and was diagnosed with bipolar disorder. Mother was not compliant with her mental health treatment recommendations. It was further alleged that Mother has a criminal history and was arrested and charged with receiving stolen property and the unauthorized use of a motor vehicle on June 20, 2015. Mother refused to provide the name of the Child's Father. This Report was determined as valid. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "b").

3

On April 18, 2016, DHS obtained an Order of Protective Custody (OPC) for the Child. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "c").

On April 19, 2016, the Child was discharged from Hahnemann Hospital to the care of DHS, and was placed in the care of his Maternal Grandmother, M.C. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "d").

A Shelter Care Hearing was held on April 20, 2016 before the Honorable Allan L. Tereshko. Temporary Legal Custody was transferred to DHS. The Child was placed in Kinship Care with Maternal Grandmother, M.C. Mother is referred to CEU for an assessment and forthwith drug screen. (Shelter Care Order, 4/20/2016). Also on April 20, 2016, Mother was seen at the CEU and she tested positive for PCP. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "f").

The identity and whereabouts of the Child's Father are unknown to DHS. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "h").

On April 25, 2016, DHS filed a Dependent Petition for the Child. DHS determined that there was sufficient basis to find that Aggravated Circumstances existed pursuant to 42 Pa.C.S. §6302 (5), in that on November 30, 2015, the parental rights of Mother were involuntarily terminated as to her two other Children: R.G., d/o/b:██████/2002, CP-51-

4

DP-0012074-2010; and O.O., d/o/b: ▓▓▓/2009, CP-51-DP-0045276-2009. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "i").

Mother's two other Children: R.G., and O.O. have been adopted by the Children's Maternal Grandmother, M.C. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "j").

An Adjudicatory Hearing was held on April 27, 2016, before the Honorable Allan L. Tereshko. Legal Custody of the Child remains with DHS, and placement remains in Kinship Care. Mother's visitation is suspended until she renders a negative drug screen. If she renders a negative drug screen, Mother shall have liberal supervised visits with the Child at the Agency. Mother to attend all of Child's medical appointments. Mother referred to CEU for forthwith drug screen, assessment, and dual diagnosis, and three randoms prior to next court date. Mother also referred to ARC for parenting and housing. (Order of Adjudication and Disposition- Child Dependent, 4/27/2016).

On April 27, 2016, the Court found that clear and convincing evidence was presented to establish that the alleged Aggravated Circumstances exist as to Mother. The parental rights of Mother have been involuntarily terminated with respect to another Child. (Aggravated Circumstances Order, 4/27/2016).

On April 27, 2016, May 4, 2016, and May 16, 2016, Mother was seen at CEU. On all three dates, Mother tested positive for PCP. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "m").

5

On May 16, 2016, Mother was scheduled to receive substance abuse assessment; however, she failed to return to the CEU following her urinalysis drug screen. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "n").

On June 9, 2016, June 22, 2016, and July 7, 2016, Mother was seen at the CEU. On all three dates, Mother tested positive for PCP. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "o").

On July 15, 2016, Mother was incarcerated at Riverside Correctional Facility (RCF) due to violating the terms of her probation. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "p").

A Permanency Review Hearing was held on July 28, 2016, Honorable Allan L. Tereshko found that Legal Custody of the Child remains with DHS. Placement of the Child remains in Foster Care (Kinship). Child is placed with Maternal Grandmother, M.C., in Kinship through Progressive Life. Mother is currently incarcerated in RCF, PP#816099. Mother to the CEU for assessment, dual diagnosis and forthwith screen plus 3 randoms upon her release from prison. CUA to make outreach to Mother. Prior order on visitation to stand. SCP to be held, Mother is to participate by phone. CUA to contact Mother's prison counselor. (Permanency Review Order, 7/28/2016).

On August 30, 2016, CUA-TP4C held an SCP meeting. The goal for the Child was "return to parent". The parental objectives for Mother were: 1) continue drug and alcohol treatment; 2) continue mental health treatment; 3) follow the rules of the home

6

where she is residing; and 4) per the Court's Order, Mother is not to have visitation with the Child until she renders negative urine drug screens. Mother failed to participate in SCP meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "r").

A Permanency Review Hearing was held on October 20, 2016, before the Honorable Allan L. Tereshko. The Court held that Legal Custody of the Child remains with DHS, and placement of the Child remains in Foster Care (Kinship). Child is placed with Maternal Grandmother, M.C., in Kinship through Progressive Life. Mother's weekly supervised visits at the Agency to continue. Mother is referred to CEU for monitoring, continue with dual diagnosis program and ARC. CEU report as to Mother is incorporated by reference. (Permanency Review Order, 10/20/2016).

On November 11, 2016, CUA-TP4C held a SCP meeting. The goal for the Child was "return to parent". The parental objectives for Mother were: 1) continue drug and alcohol treatment; 2) continue mental health treatment; 3) per the Court's Order, Mother is not to have visitation with the Child until she renders negative urine drug screens, and 4) Mother to continue with ARC services. Mother participated in the meeting. (Exhibit "A" Statement of Facts, attached to DHS Petition for Involuntary Termination of Parental Rights, filed 12/30/2016, ¶ "t").

Mother's Probation, after her guilty plea to Unauthorized Use Mother/Other Vehicles on 5/24/2016, was REVOKED/NEW STENTENCE: 9-23 months in a County prison with credit for time served; re-entry eligibility; detainer lifted. (Disposition 1/10/2017, CCP Criminal Docket- CP-51-CR-0007547-2015).

## TERMINATION HEARING

On January 18, 2017, this Court held a Goal Change/Termination Hearing and heard testimony only on DHS's Petition to Terminate Mother's Paternal Rights as to Child, J.C. Mother was present at the hearing and represented by her attorney. (N.T. 1/18/2017, p.4 at 18).

Counsel for DHS, Caitlin Dunston, called her first witness, Ashley Wright, Core Case Manager, Turning Points for Children. She testified she has been the Case Manager since the Child was brought into care on April 18, 2016, when he was removed from the hospital directly to his Maternal Grandmother. The Child was born with PCP in his system, and Mother was transient. (N.T. 1/18/2017, p.7 at 13-25).

Ms. Wright testified, Mother's objectives were established at that time, and they included comply with sobriety, treat for mental health, treat for drug and/or alcohol, obtain housing, and have visitation with the Child. (N.T. 1/18/2017, p.8 at 1-20).

Regarding visitation, Mother was not to have visits with the Child unless her urine screens were negative. Regarding drug and/or alcohol, and mental health services, Mother was to continue to remain at Interim House, where she enrolled while she was pregnant with the Child. She was also referred to Men and Woman of Human Excellence, another dual-diagnosis program. Ms. Wright testified Mother did not complete any drug/alcohol programs. (N.T. 1/18/2017, p.8 at 21-25; p.9 at 1-20).

She also noted that throughout this case, Mother had been ordered to go to CEU for random drug screens. Mother had positive drug screens consistently, and produced

8

three negative drug screens in September 2016. Therefore, she was allowed to visit with the Child during the month of September until she produced a positive drug screen for PCP again. (N.T. 1/18/2017, p.10 at 15-25; p.11 at 1-3).

Mother received mental health services at Men and Women of Human Excellence, where she was involved in group treatment. Mother also had services at NHS Parkside, IOP. However, Mother was not consistent with attending mental health services, and never completed a drug and alcohol or mental health program. (N.T. 1/18/2017, p.11 at 4-18; p.14 at 12-19).

Ms. Wright noted Mother had first been incarcerated from July to September of 2016 for a probation violation due to charges of theft. She communicated with Mother's Probation Officer and noted that Mother has to submit to random drug screens as a condition of probation. After that incarceration, Mother tested negative for drug screens at CEU in September 2016, and was allowed visits with her Child. Visits were halted when Mother tested positive for PCP in October 2016, and then was incarcerated again in November 2016. (N.T. 1/18/2017, p.12 at 1-25; p.13 at 1-23).

Regarding Mother's housing situation, Ms. Wright testified Mother had an apartment for a short period of time, but she was living with her brother and his wife at that time. Ms. Wright testified that Mother is currently incarcerated and upon release, she believes Mother is not in a position to provide a home for her Child. (N.T. 1/18/2017, p.14 at 1-11).

9

Ms. Wright testified she sees the Child twice a month at the Kinship home with his Maternal Grandmother and his two siblings, O.O., and R.G. The Child is bonded to his Grandmother, and the Child looks to her for parental care and duties because he has been with her since birth. She further opined that the Child would not suffer irreparable harm if Mother's parental rights were terminated. She further stated it is in the Child's best interest to be adopted because he is stable with his Grandmother, and his siblings, and is well taken care of. She last saw the Child on 1/05/2017 and he was safe. Progressive Life Center provides kinship services for Maternal Grandmother (N.T. 1/18/2017, p.15 at 24-25; p.16 at 1-7; p.17 at 20-25; p.18 at 1-13).

Ms. Wright testified a Father was never identified for the Child, and no one has come forward to claim paternity. Father remains unknown for this Child. She further testified Mother has a third Child, E.L., d/o/b: 03/19/2004, who resides with her Father, and is not in the dependency system. (N.T. 1/18/2017, p.16 at 11-24).

Mother was next to testify. She testified she has contact with her Children by telephone through her Mother, the Children's Grandmother. She has visited with her Child four times recently, and that she is bonding with him. She further stated she has signed up for both parenting classes and mental health services. (N.T. 1/18/2017, p.21 at 3-21; p.23 at 3-14).

## STANDARD OF REVIEW AND LEGAL ANALYSIS

When reviewing an Appeal from a Decree terminating parental rights, an Appellate Court is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or

10

insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, an appellate court must accord the hearing judge's decision the same deference that it would give to a jury verdict. The Pennsylvania Superior Court need only agree with a trial court's decision as to any one subsection under 23 P.C.S.A. §2511 (a) in order to affirm a termination of parental rights. *In re D.A.T. 91 A.3d 197 Pa.Super.2014)*.

The standard of review in termination of parental rights cases requires appellate Courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. In re T.S.M., 620 Pa. 602, 71 A.3d 251, 267 (2013) (citations and quotation marks omitted) In re Adoption of C.D.R., 2015 PA Super 54, 111 A.3d 1212, 1215 (2015).

Termination of parental rights is governed by Section 2511 of the Adoption Act 23 Pa.C.S.A. §§ 2101–2938, which requires a bifurcated analysis. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and

11

welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted). In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1049-50 (2015). The Court need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. In re Adoption of C.J.J.P., 2015 PA Super 80, 114 A.3d 1046, 1050 (2015).

Mother has three other Children: R.G., age 14, O.O., age 8, who were removed from her care and currently in Adoption proceedings with Maternal Grandmother; and E.L., age 13, who lives with her Father.

A full Hearing on the merits was held on January 18, 2017, whereupon the Court granted the Petitions filed by DHS to involuntarily terminate Mother's parental rights to this eleven month old Child.

## A. The Trial Court Properly Found the Department of Human Services Met Its Burden by Clear and Convincing Evidence To Terminate Mother's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), and (5).[1]

---

[1] 1(a) General Rule.—the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parenting claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parents by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child

12

Mother's issues with mental health, drug use, and housing are substantiated on the record by the credible testimony of Ashley Wright, Core Case Manager, for Turning Points for Children. She testified she has been the Case Manager since the Child was brought into care on April 18, 2016, four days after his birth, when he was removed from the hospital directly to his Maternal Grandmother.

The evidence is clear and convincing regarding Mother's non-compliance with the FSP objectives. Mother consistently tested positive for PCP, and only had negative tests after a period of incarceration between July and September, 2016, when she violated her probation.

Mother was ordered to have supervised visits with her Child, only if she had negative drug screens, and Mother only complied with this requirement after she was incarcerated, and that was short lived because Mother again tested positive for drugs.

The evidence is also clear and convincing regarding Mother's inability to maintain housing, and her inability to complete any program she was referred to. Based on the evidence presented, this Court found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1),(2), and (5).

---

within reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

**B. Trial Court Properly Found that Termination of Mother's Parental Rights was in the Children's Best Interest and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).[3]**

After the Court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the children pursuant to 2511(b) In re Adoption of C.L.G., 956 A2d 999 (Pa.Super 2008). In terminating the rights of a parent, the Court "shall give primary consideration to the development, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. In re T.S.M., 71 A3d 251 (Pa. 2013).

This Court finds credible the testimony from Ms. Wright, the Core Case Manager, for Turning Points for Children that the Child was bonded to Maternal Grandmother and not to Mother. She provided the Court with credible testimony that the Child looked to his Maternal Grandmother, not to Mother for safety, comfort and to meet all of his daily needs. She also opined that the Child would not suffer irreparable harm if Mother's rights were terminated and that termination of Mother's parental rights and adoption would be in the best interest of the Child.

---

[3] Other Considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1),(6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

This Court found that Mother evidenced an incapacity to parent this Child, and was not persuaded that Mother could or would resolve these issues in the near future.

## CONCLUSION

The Court concluded:

Considering the evidence regarding the Termination Petition against Mother, the evidence, is clear and convincing, that Mother has failed to take any steps to remedy the issues that brought the Child into care. The Child was removed from her care based upon Mother having illegal drugs in her system. The Child was in placement shortly after that point in time. The Child has remained in the same placement.

Mother has not taken any affirmative steps to realistically place herself in a position to parent this Child in the future. Her history of failing to parent her other Children supports a finding that she will be unable to parent this Child going forward. She has not and will not be able to remedy any of those issues.

Therefore, under 2511 (a) (1), (2), and (5), Mother's rights are subject to termination. The parallel analysis regarding this Child considers the evidence under 2511 (b),

15

and that evidence is that the Child is well-bonded with the caretaker, who is also the caretaker of this Child's siblings. While Mom may have belatedly established a bond, it is clear that it is not a parental bond. That bond exists with the existing caretaker within the family structure that the Child lives.

Therefore under 2511 (b), and 2511 (a) (1), (2) and (5), Mother's rights are terminated. As a matter of law, since there is no evidence that anyone has stepped forward to claim paternity of this Child, nor has anyone ever entered this Child's life as a father figure, the Father remains unknown. Therefore, under the law, putative unknown Father's parental rights are terminated. (N.T., 1/18/2017, p.30 at 7-25; p.31 at 19).

For the foregoing reasons, this Court respectfully requests that the Decree of January 18, 2017, terminating Mother, Y.I.C.'s Parental Rights to the Child J.C., and the Order changing the permanency goal to Adoption be AFFIRMED.

BY THE COURT:

_____
ALLAN L. TERESHKO, Sr. J.

March 21ˢᵗ 2017
DATE

16